The document below is hereby signed.

Signed: June 10, 2011



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re | ) |
| | ) |
| | ) Case No. 09-00414 |
| STEPHEN T. YELVERTON, | ) (Chapter 7) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| | ) |
| LUDWIG & ROBINSON, PLLC, | ) |
| | ) |
| Plaintiff, | ) Adversary Proceeding No. |
| | ) 11-10001 |
| v. | ) |
| | ) **Not for Publication in** |
| YELVERTON LAW FIRM, PLLC, *et al.*, | ) **West's Bankruptcy Reporter** |
| | ) |
| | ) |
| Defendants. | ) |

<u>MEMORANDUM DECISION RE MOTION FOR SANCTIONS</u>

The Yelverton Law Firm, PLLC (the "PLLC") has filed a Motion for Sanctions and Contempt Against L&R for Willful Violation of Automatic Stay and Permanent Injunction. The motion will be dismissed as fundamentally flawed because the plaintiff has not sued the debtor, Stephen T. Yelverton, or proceeded against his property, and thus has not violated the automatic stay of 11 U.S.C. § 362(a) or the discharge injunction of 11 U.S.C. §

524(a).

I

In contending that the plaintiff's amended complaint violates the automatic stay and the discharge injunction, the PLLC asserts that it is no longer in existence, and thus the proceeding is one against the debtor, Yelverton, but as discussed below, the PLLC appears to still be in existence.  If the PLLC were no longer in existence, then the non-existent PLLC would have no standing to pursue sanctions for such violations, and, in any event, for reasons discussed below, the PLLC's non-existence would not demonstrate that violations have occurred.[1]

II

The PLLC was dissolved on December 31, 2008.  It asserts that Virginia law in effect in 2008 controls the effect of the dissolution of the PLLC, and argues that "[u]nder the Virginia Code, Section 13.1-1049(3), as in effect on December 31, 2008, all the tangible assets of YLF, which were cash, passed to the Debtor as the sole Member as of December 31, 2008, which would include the name and other intangibles of YLF, along with YLF

---

[1] Ordinarily, one would expect that Yelverton, not the PLLC (through Yelverton as its attorney), would have pursued the sanctions motion because Yelverton is the entity being harmed by the alleged violations.  Moreover, the motion ought to have been pursued as a motion in the main bankruptcy case, not in this adversary proceeding which has been remanded to the Superior Court.  Rather than dismiss the motion on those bases, I will, in the interests of putting an end to this baseless motion, proceed to address its lack of merit.

itself."[2]

Prior to 2009, the Va. Code Ann. provisions in force addressed pursuit of claims against a dissolved PLLC as follows: § 13.1-1048 provided that the members of a dissolved PLLC could wind up the company's affairs (unless a circuit court took over that task); § 13.1-1049 directed that the assets of the PLLC are to be distributed to creditors; § 13.1-1049.1 provided a procedure for the debtor to establish, as to the known claims against the PLLC, a deadline to pursue such claims not admitted by the PLLC to be owed; § 13.1-1049.2 provided a procedure for the debtor to establish a deadline for pursuit of claims against the PLLC not covered by a deadline established under § 13.1-1049.1; and § 13.1-1049.3(A) provided a procedure for setting

> security to be provided for payment of claims that are contingent or have not been made known to the dissolved limited liability company or that are based on an event occurring after the effective date of dissolution but that, based on the facts known to the dissolved limited liability company, are reasonably estimated to arise after the effective date of dissolution.

The PLLC has not alleged that it complied with any of those procedures. Even if it did, all that means is that it may have a defense to the plaintiff's claim if the plaintiff failed timely

---

[2] The Virginia Code provisions at issue were later amended. If the PLLC continued to hold assets upon the enactment of those amendments, it may well be the case that the new provisions came to govern the disposition of those assets, but I need not reach that issue. I will assume, in the PLLC's favor, without deciding, that the law in effect in 2008 is to be applied.

3

to pursue the claim by any deadline established by such procedures.  Finally, in 2008, Va. Code Ann. § 13.1-1050(A) provided in relevant part:

> The winding up of a limited liability company shall be completed when all debts, liabilities, and obligations of the limited liability company have been paid and discharged or reasonably adequate provision therefor has been made, and all of the remaining property and assets of the limited liability company have been distributed to the members.

Current Va. Code Ann. § 13.1-1048(A) contains identical language. Thus, whether current Virginia statutes or the statutory provisions which applied in 2008 control, the PLLC's assets still held by the PLLC did not pass automatically to Yelverton, but are to be held for the orderly winding up of the PLLC's affairs, including payment of its debt to the plaintiff.[3]

The PLLC may be contending that upon dissolution, Yelverton moved all of the PLLC's assets into his name.  Even if that were true, that would not make the proceeding one against Yelverton or his property.  When a PLLC has not taken the necessary procedural steps to bar the assertion of a claim, that claim may be enforced

---

[3] In contending that its assets had become Yelverton's, the PLLC pointed in its motion to Va. Code Ann. § 13.1-1049.3. That provision (whether the current version or the version that applied in 2008) deals with posting security for certain debts. Even if the plaintiff's claims had been subject to the procedures of that provision, the PLLC does not contend that the necessary proceeding was commenced in a Virginia Circuit Court to establish the appropriate security. In any event, if security had been established, the plaintiff would be entitled to enforce any judgment it obtains against such security.

4

against the dissolved limited liability company, to the extent of its undistributed assets. Va. Code Ann. § 13.1-1049.3(D)(1) (as in effect in 2008).[4] The PLLC does not contend that it took those procedural steps. Accordingly, the plaintiff was entitled to sue the PLLC to recover a judgment and pursue enforcement of that judgment against whatever undistributed assets it can locate. Even if the PLLC *had* taken the necessary procedural steps to bar the PLLC's claims, all that would mean is that the claim is barred, and would not make the claim one against Yelverton or his property.

The plaintiff's amended complaint seeks a monetary judgment against the PLLC. Accordingly, this is not a proceeding against property of anyone, and, in particular, is not a proceeding against property of Yelverton. If the PLLC no longer has any assets, the plaintiff may be engaging in an unproductive law suit

---

[4] The PLLC contends that the plaintiff's claims against the dissolved PLLC can be enforced against a former member to the extent of assets distributed to that member, but that such enforcement would not be against the member as a liquidating trustee. Whether the plaintiff is barred by the automatic stay or the discharge injunction from suing Yelverton with respect to PLLC assets he received is an issue I need not reach because the plaintiff has not sued Yelverton.

5

*vis a vis* the PLLC,[5] but that does not make the proceeding one against Yelverton himself or his property.

The PLLC seems to contend that Yelverton inherited the PLLC's name upon its dissolution, and that he and the PLLC became one and the same. That, however, is not the case. Upon dissolution, a PLLC and its members remain separate entities.

The PLLC further contends that the proceeding against the PLLC is necessarily one against him because the PLLC had ceased to exist. The PLLC does not contend that the PLLC filed articles of cancellation with the Commission, certifying that it had completed a winding up of its affairs,[6] as contemplated by the version of Va. Code Ann. § 13.1-1050(A) in effect in 2008, and does not contend that it obtained a certificate of cancellation

---

[5] The plaintiff has also sued the debtor's former spouse, Alexandra Senyi, with respect to the same obligations it has pursued against the PLLC. Those claims against Senyi (to whom Yelverton may have indemnification obligations) likely have caused Yelverton to take an interest in this proceeding and, as an attorney, to file the papers on behalf of the PLLC opposing the remand of the proceeding to the Superior Court, and seeking to impose sanctions against the plaintiff.

[6] In 2008, Va. Code Ann. § 13.1-1050(A) provided in relevant part:

> The winding up of a limited liability company shall be completed when all debts, liabilities, and obligations of the limited liability company have been paid and discharged or reasonably adequate provision therefor has been made, and all of the remaining property and assets of the limited liability company have been distributed to the members.

Current Va. Code Ann. § 13.1-1048(A) contains identical language.

6

that would have terminated the existence of the PLLC.[1] In any event, if the PLLC's existence terminated, that would not cause a suit against the PLLC to be one against Yelverton: it would only mean that the law suit is against a non-existent entity.

The PLLC seems to be arguing that after the PLLC dissolved, Yelverton operated the Yelverton Law Firm as an unincorporated entity, and that, accordingly, the claims asserted are against Yelverton as the operator of an unincorporated entity. That argument fails. The plaintiff has not sued an unincorporated entity: its amended complaint is plainly against a PLLC. If that PLLC is no longer in existence, that does not make the proceeding one against an unincorporated entity. Instead, the amended complaint would then be one asserting claims against a PLLC which is no longer in existence.

In addition, the amended complaint relates to events that occurred prior to dissolution of the PLLC. Even if the claims related to events that occurred *after* dissolution, and if a

---

[1] Pursuant to Va. Code Ann. § § 13.1-1050(B), as in effect in 2008:

> If the Commission finds that the articles of cancellation comply with requirements of law and that all required fees have been paid, it shall by order issue a certificate of cancellation, canceling the limited liability company's certificate of organization. Upon the effective date of such certificate, the existence of the limited liability company shall cease, except for the purpose of suits, other proceedings, and appropriate actions by members as provided in this chapter.

7

dissolved entity is incapable of engaging in business (such that any operations by its sole member using its name are the operations of the member as a sole proprietorship, with resulting liabilities being his, and not the liabilities of the PLLC), all that would mean is that the plaintiff has sued the wrong party, an entity that is not liable for the debts being pursued.  It would not turn the proceeding into one against the debtor or his property.

                                III

The PLLC argues that the action violates the discharge injunction that arose in Yelverton's favor:

> 16. Although the lawsuit by L&R is nominally against YLF, it is intended to indirectly collect from the Debtor the <u>same</u> debt that has been Discharged. As a result of ceasing to be a limited liability company on December 31, 2008, all the assets of YLF, and YLF itself, then became property of the Debtor under the Virginia Code, Section 13.1-1049(3).  Thus, any recovery by L&R could only be against the Debtor, or property of the Debtor, and therefore is prohibited by 11 U.S.C. 524 (a)(2).

As noted already, however, the plaintiff is not suing Yelverton and is not pursuing any property at this juncture.  It is only suing the PLLC and Senyi, and only for a monetary judgment.

                                IV

The PLLC makes an alternative argument regarding the discharge injunction.  It contends:

> 17. The lawsuit by L&R in the D.C. Superior Court against Defendant Alexandra Senyi is moreover prohibited under 11 U.S.C. 524(a)(2). L&R seeks to hold Defendant Senyi liable as a beneficiary of certain services that it

>     claimed payment from the Debtor in its Proof of Claim and
>     its Adversary Proceeding No. 09-10023, and which was
>     Denied and Discharged. Thus, L&R is attempting an
>     "offset" of this <u>same</u> Discharged debt by demanding
>     payment from Defendant Senyi as to what it could not
>     obtain from the Debtor in the Bankruptcy Court, and
>     therefore its action is prohibited.

The plaintiff filed a proof of claim in Yelverton's bankruptcy case asserting that Yelverton was liable for the PLLC's debts, and it also sought a determination of nondischargeability on the basis that the claim was one for fraud.  I sustained Yelverton's objection to the proof of claim, and dismissed the nondischargeability complaint.  (As I recall my oral decision, I ruled that Yelverton had not engaged in fraud in causing the PLLC to run up its debt to the plaintiff, and thus could not be held liable for the PLLC's debts.)  Accordingly, there is no debt owed by Yelverton that would be indirectly collected via suing Senyi.  The PLLC's reliance on *In Re Borowski*, 216 B.R. 922, 924 (Bankr. E.D. Mich. 1998), is misplaced.  There, a creditor was attempting in bar disciplinary proceedings against a debtor-attorney to have the bar require, as part of disciplinary sanctions, that the debtor pay the creditor's claim for malpractice.  Such an indirect attempt to coerce the debtor to make payment of his own debt to the plaintiff is not present here.

　　The PLLC appears to contend that the pursuit of Senyi for the debt of the PLLC (with Yelverton then being obligated to indemnify Senyi) is a circumvention of this court's ruling that

Yelverton owed the plaintiff nothing.  It is not apparent that the successful defense that Yelverton raised to the plaintiff's proof of claim would be available to Senyi to defeat the plaintiff's claims against her.  Even if this court's ruling against the plaintiff with respect to the plaintiff's proof of claim against the bankruptcy estate could be given collateral estoppel effect (issue preclusion effect) in favor of the PLLC and Senyi in this proceeding against the PLLC and Senyi, that is something the PLLC and Senyi can raise in the proceeding.  The applicability of collateral estoppel would not make the proceeding a violation of the automatic stay or the discharge injunction.

V

An order follows denying the sanctions motion.

[Signed and dated above.]

Copies to: All counsel of record; Office of United States Trustee; chapter 7 trustee.